Forte et al. v. Direct Energy Services, LLC Good morning, Your Honors. My name is Scott Camber of Camber Law. I represent Plaintiff Forte and the intervener plaintiffs, appellants appealing the improper grant of summary judgment by the district court. Fundamentally, the district court erred by granting summary judgment by the satisfaction of an objective standard of clear and conspicuous from subjective testimony. Fundamentally, he got the standard right in that laying out the FTC multi-factor test for whether there was clear and conspicuous, whether a contract is clear and conspicuous, placement, proximity. Even if the district court erroneously relied on deposition testimony, if we all agree, I think we all agree, we should apply an objective test, right? Yes. And that the FTC multi-factor, the New York cases don't really lay out what factors you should look at, but I'll ask them, but I think we might all agree that we should supply those factors here. So we can, this is de novo review, we can do that here, right? And you agree it's also an issue of law, right? You agree it's an issue of law? When you apply those factors, whether it's clear or conspicuous is an issue of law? Not necessarily. I do agree that... I was doing well until that last part, I guess. No, no, you were. What I would say is that the Supreme Court had opined in the Hanna Financial case, I think it was Hanna Financial, that when there is a standard such as this that takes into account the behavior, there is a preference for a fact finder. It could be so obviously not clear and conspicuous, as I believe that the district court, if not found, at least intonated on its motion to dismiss the court. But my question is, what is clear and conspicuous for New York law? Because this is a New York case. And the interesting thing is that there are some federal cases dealing with advertising that would say that what went on here was clearly clear and conspicuous. And there are some cases dealing with arbitration written some by each of my fellow judges who say in that context, arbitration, advertising, clear and conspicuous requires colors and things of that sort. This case is neither of those. So what is the standard that New York applies here for clear and conspicuous? And I'd like... Is it more like the federal advertising? Is it more like the arbitration? Or is it something we don't know? I would argue that it is, that although we do not have something specifically for New York, I think the FTC provides good guidance that the parties agree on in this case. I think that when one looks back at the decision of the district court from August of 2017, there's a couple of things the lower court said that I think are particularly helpful to the issue of what is the New York standard. It says, despite defendants' contention to the contrary, the terms and conditions do not make any effort to highlight or conspicuously disclose that a variable rate... You agree they get to include the customer disclosure statement as well, right? You would agree that's part of what we should look at, right? Yes, Your Honor. All right. And I don't know how the... Put aside the font and the display, but the language in this customer disclosure could not be clearer, right? I mean, that is as clear as it gets. We will send you a renewal notice between 30 and 60 days prior to the end of your initial term. This agreement shall automatically renew for successive month-to-month periods at a standard variable rate plan. So the explanation is clear, right? It is. I think that in the context... Again, taking a step back, and this was, I think, what led the court into some problems with the deposition testimony, and that is in and of itself, the language is clear. Crystal clear. Crystal clear. I don't know how you could say it any clearer than that. I thought you were complaining about the location of it and the font and... Conspicuous. Clear is not clear and conspicuous. It's not. So what you're saying is the language is clear, but we need something like what was held in the arbitration cases, although arbitration is very different in terms of timing, of color and size and something of that sort. Is that what you're saying? It has to be conspicuous. That, it would be one way of making it distinguish... To distinguish it. The lower court, it did find that they made no effort to highlight or conspicuously disclose it. All right, but it's also in the same font size. It's not smaller. It's set out in a separate area. It's not merged with other information. I mean, there are a lot of aspects to this that don't exist. The case, the Solomon case, which I wrote, the subway sign was like completely... I mean, it's a whole nother ballpark. It was potentially on a small sign in the store, lower case print in the corner. I mean, nothing remotely resembling what we have here. It is a particularly large packet of documents and information. It is not standard. It is something... Let's just focus on this, though. Yes. What they should have put in a different... That portion should be in a different color than the rest of the portion. What do you suggest they should have done? That was, again, for the plaintiffs that received that information, they... I'm not arguing that the language should have been clearer. I'm saying that the language in the disclosure statement did not satisfy the standard for... Why, though? Tell me why. It's set apart. It's in the same font as everything else. What should they have done to make it more clear? Tell me. It was... We do not know how the information was assembled. It appears from the testimony that was provided that the disclosure statement wasn't given as a separate document. It was given in the middle of a package of documents. Let me ask you a different question. The statute says that the plaintiff must be injured by reason of any violation. So there's a causation requirement here. Yes. Is there any... And so on this, perhaps we do look at the depositions and the subjective testimony. What evidence is there of injury by reason of the violation? Because I think they all testify that they didn't read it, they didn't look at it. They did not all testify. That is what... That is actually one of the cornerstones of the problems of the court, is that the lower court did not look. It would appear there's not a single citation to the agreed material facts and plaintiff's objection to the material facts. The plaintiffs did not look. Do you agree that there is a causation requirement and therefore the injury that they suffered, assuming they suffered injury, must have been caused by the failure not to provide clear and conspicuous information? Do you agree with that, number one? And then is there any evidence that indeed they were injured by reason of the violation? Causation is not reliance. And in this case, we know specifically the difference between causation and reliance, because under 347 D. 7... Yeah, but you don't have causation here. My problem with going on that ground, which I think is actually devastating to you, is that if that is so, then you would have a right to amend and to introduce more, so that I am a little troubled about that, which I think you haven't met, because I think that's something that could be cured. I come back to asking, what is it that you think New York requires that is more than what was given here? And if that is uncertain, then we should certify it to New York. But if that is not uncertain, then, yeah. I think it is uncertain in the sense that New York has not given us a clear standard. However, in this case, I believe that the standards from the multi-factor test of the FTC placement, the placement, is it something that is conspicuous based upon where it is, or is it put into the middle of 16 pages of documents? Proximity, where is it with respect to... Let me ask you this. The fact that the New York Public Service Commission approved this format, putting aside, I don't need you to address whether or not that precludes you from bringing this suit under this statute. Let's say that has nothing to do with it. Is that entitled to any type of deference by a court? Should that be considered at all? You think that's completely irrelevant? According to the New York courts, it's completely irrelevant. Which case says that that is completely relevant? If we're looking at the... Which case says that if an agency opines in their regulatory capacity that this language is clear and conspicuous, that a court should not consider it? In this particular... I'm looking at the site. I put SIMS, but I don't know the... To answer that, but I think that the statement itself that in the times that 347 has been considered by New York courts, in each and every instance, they said that the judiciary is entitled to an independent review of the decisions of the... I think your better argument is that the agency made this determination before this particular statute was passed and hasn't reconsidered it. And so it's a question of whether they were speaking to this or not. Now, I'm not sure whether it's a good argument, but I think it's a better argument than the one that you're making. I would also just leave that the issue with respect to causation, and I think what is pretty clear about what is intended by causation by the New York legislature, is 347D8 says that the contract, if it is in violation, if a disclosure is not clear and conspicuous under D7, then the contract itself is void under D8. So that the causation here is intended to be the purchase under the contract or with the lack of a disclosure. Ergo, if in this case, two of our plaintiffs, there is no evidence presented that two of our plaintiffs, in fact, the intervening plaintiffs, received the contract at all, which would mean that it is necessarily a violation of 347D7. All right. Thank you, Mr. Camber. You have your three minutes for rebuttal. And now we'll hear from Mr. Matthew. Thank you, your honors. Matt Matthews for Direct Energy of the Appellee. I'd like to start with the issues that the court focused on. The standard, the deference that's due to the PSC, if any, and causation. As to the standard, the court is correct that the applicable standard is the objective, reasonable consumer, and that this question can be determined as a matter of law. And as to the New York cases that you should look at for that, the Oswego Pension Fund case is a section 349 case. The New York Court of Appeals has not ruled on a 349D7 case. And what about the factors for clear and conspicuous? Do you agree that, even though New York courts have not opined under this statute, that the FTC factors are a good framework? Would you agree with that? I think TILA is a better framework because this is not an advertising case. The FTC factors go to advertising cases. Let me just put an arduendo. We have FTC cases. We have other cases. This comes up again and again in New York. Most of the New York cases, because of diversity, will not be in New York courts. Shouldn't the New York Court of Appeals be given an opportunity to say what clear and conspicuous is highlighted in color, or whether it means what is here, plain and simple, clear and conspicuous, not larger, not smaller, but something that any reasonable person would read? Shouldn't we let the New York Court of Appeals have a chance to tell us which would protect defendants in the future? I don't think it's necessary in this case, because to affirm the court would be ruling consistent with the PSC, which reviewed these contracts after the statute was put in place. The PSC actually provides forms that ESCOs, like Directors of the Interior, are required to use. The renewal notice, which hasn't been talked about yet, is a mandatory form. But as to the New York Court of Appeals, its Oswego case says that— Well, it has to do with Judge Calaresi's question earlier. The mandate that companies use these forms, is that after the passage of the statute? It was. It was after the statute was passed, the PSC charged its staff with modifying the UBP, the Uniform Business Practices, which are the PSC's regulations, to make sure that they included a rule that implemented 340.97. And this is all in the record. It's in the expert report of Lou Anne Shearer, which is at A757. But you're not arguing that somehow that binds this court, that this precludes him from bringing this claim? You're not arguing that? I'm not. I'm not. The cases that the appellants have cited are the Simmons case, which is a primary jurisdiction argument. And I'm not making that argument. You're saying we should show deference to that? That's right. And there are two cases that I would mention in that regard. One is this court's Richards case, which dealt with a Connecticut statute. And Judge Scullin talked about this in his opinion. And I think he talked about it correctly. He said what Richards stands for is the proposition that the court can review it, but it shouldn't require something more than the regulator has required. If the regulator has approved it, requiring something more than they did would constitute overreach. But the other case that I would mention is a case from last year. It's a third department case. It's Atlantic Power and Gas. And in that case, it's a little bit reversed. There was an ESCO whose license was suspended by the PSC. And the ESCO sued the PSC for revoking that license, asked the court to review it. The court reviewed it to see if the PSC's process had given them due process and was fair. The court found that there was nothing in the record that shocked its sense of fairness. And it cited to 349D11. 349D11 and D12 are two provisions in 349D that say that this statute is not meant to limit or restrict the PSC's ability to restrict ESCOs from doing business in New York. So that would mean that if the PSC had rejected Direct Energy's language and we filed suit, the court would show deference to that decision. So the level of deference that is shown is not specified in the case law. But it has to mean something. Let me ask you about, you try to also rely on the renewal notice, which has this information front and center. But their argument is it was an automatic renewal. So it's unfair to say, if there was something problematic about the initial disclosure, you know, the consumer's not necessarily going to see the renewal letter or pay attention to the renewal letter, that wouldn't save you if the initial agreement and the initial disclosure were problematic. The fact that the renewal notice was clear wouldn't save you, right? Well, I don't... Especially when it's automatic. It's not like they signed the renewal notice or had to do something once they got the renewal notice to renew. It was an automatic renewal, right? It's automatic, but they're not required to renew. They can terminate at any time without penalty. So you can't just rely and say, look, even if the initial disclosure was problematic, we had this beautiful renewal notice, that wouldn't work, right? Well, I believe they're two different contracts. There's no variable rate that's charged under the initial contract. So it might be, if the court found that there was a violation, there still wouldn't be causation because there was no charge. Yeah, that's a different issue. I think you haven't answered the question that the presiding judge said. If the initial contract was defective, if that was defective, would the fact that the renewal provision was clear be enough to cure it? In a situation where it's an automatic renewal. Where it's an automatic renewal. Yeah, and I'm saying that it is because there wouldn't be causation for any injury under the first because no variable rate was charged under that. My question is a little bit different. And it says, suppose we get it wrong. That is, that we say that what's here is clear and conspicuous enough. And New York really doesn't like that. Could the PSC then come in and make regulations which would require more? The PSC could change its forms. It could change its form in answer to what we have done and say that isn't enough. I believe- See, what worries me in many of these cases is situations where because of diversity, New York never is able to set its own standard. And I think that's wrong because these are New York cases, so they should set their own standard. But if a PSC is in a position to come in and say what you have done is wrong, then the fact that these are diversity cases doesn't matter. Once a PSC has spoken, it's a different issue. Yes, Ron, I think I understand. And I would say that the PSC is speaking for New York. The courts haven't weighed in on it. But this is the regulator that's tasked with governing ESCOs. And these forms are not just direct energy forms. The enrollment customer disclosure form is an attachment to the regulations. And that's why I say it's similar to TILA and its regulatory structure. Just as the Fed Reserve Board has provided forms to be used for to suggest to lenders how to do it- Can I ask about the forms? I want to make sure I get it right. When a consumer signs up, do they get that disclosure form that's in the grid? They do. They get it in a letter. And that's a reason, I think, Your Honor, why this is different from the Solomon case or the other arbitration cases. This is a physical letter that shows up at their house in a packet together in that disclosure part. Where is the disclosure in relation to the packet? Is it in front of the contract, after the contract? Or is that unclear? They're all in the record. Is it in the record as the consumer receives it in the mail? It is. So there's a welcome letter. They're printed front and back. So there's a welcome letter that's front and back. And then there are terms and conditions that are front and back. And the disclosure states. So the disclosure is after the terms and conditions? I believe in the documents that are in the record, they do appear after the terms. And then as the first term comes to an end, approaches an end, they're given the renewal notice. And they're told that you're going to expire in 60 days or 30 days. But it will automatically renew. And then that has the disclosure again. That's right, Your Honor. And at that point, if they do nothing, it will automatically renew. But if they want to, they can contact the company and say, we are not renewing. Without any penalty or? Without penalty. Is that a separate thing? Or is that also part of a broader packet? That is, is this, because the initial thing has this. But it's at the end of other things. And there's a question of whether New York would say, basically, you know, people don't read all the way down. If you want to say this, because we care enough about this that we passed a special law with respect to it. So you should say it up front and center. And anything else is not clear and conspicuous. That's a possibility. Now, what I want to know is when you come to the renewal, is that part of a whole lot of other information and advertising and saying how nice we are? Or is it a simple statement? Look, we will automatically renew unless you do this. It's a simple statement, Your Honor. It's the first page of the letter that the customer received there that has terms and conditions enclosed behind that disclosure statement. It's a box in the center of the front page that in two places says variable. And that form, I mentioned the customer disclosure statement being attached to the regulations and a suggestion to ask us how to do it. And they have to submit those for approval. And it has to be substantially the same. So the renewal notice has to be identical. That brings us back to the presiding judge's question. If the initial one is insufficient, is the fact that the second one might be sufficient, sufficient so that you win? That is the question that he asked to which I'm not sure I ever heard the answer. I think it is sufficient because there still wouldn't be causation as to the first, if the court found that it was insufficient. Isn't the causation a little tricky in this context? If they say, well, if they testified at the deposition, they didn't say it. They didn't read it. The whole issue is whether it's clear or conspicuous. Doesn't that kind of merge into the causation issue? They would say the reason we didn't see it is because it wasn't conspicuous enough. So he's saying the way the statute is written, saying it's void, is clear that they don't require that type of causation in this context. What's your response to that? Their testimony was a little bit different. It wasn't that they looked at it and didn't see it. It was that they didn't look at it at all. So that's why there's no causation is because no matter how big the disclosure was, if they didn't look at these documents, they couldn't have been injured by it. And there are lots of 349s. The record is not as clear as that they all didn't look at it, you're saying. I would submit to the court, the record speaks for itself on that. But all of them did not look at it at all. There's one gentleman. His name is Mr. Baglione, who said, when I got the initial letter, I looked at it and I read it. He contradicts himself later in the testimony. But as to causation, it doesn't matter because there's also a call recording in the record that this is another requirement by the PSC. There has to be a validation call each time. And they ask him, you understand that your rate, if you allow it to renew, will be variable month to month? He says, yes, I understand. So for that reason, even if the court somehow found that he saw it and it was too small so there was no injury, he still knew the fact because of that call and because of the subsequent renewal notice, which he said that he did not. All right. Thanks, Mr. Matthews. Mr. Camber, you have three minutes. Thank you, counsel. Thank you, Your Honors. Let me just start by saying that that is not the testimony of the plaintiff. So I'll direct the court, since my time is limited, to page 33 of our reply brief, in which it goes through some of the specifics regarding the court and how the plaintiff did read the contract, but also the document that the court completely ignored, which was the plaintiff's rebuttal of the undisputed material facts, which starts on page 900 of the joint appendix. That goes through and I think makes quite clear that there is not undisputed facts regarding the, even though the plaintiffs can't demonstrate the satisfaction of the objection standard, from a causation standpoint, most of them did read the contract. The ones that said that they didn't read the contract was because they didn't believe they received the contract in the first place, which would make a point. Why shouldn't we consider the renewal notice, too, in light of the fact that even if it's automatically renewable, that if you get it and you see it at the top of that letter, you can instantly cancel with no penalty? Why isn't that then also something we should consider, that right before it kicks in, they get another notice and are told, you can get out of this if you want? That is an independent basis for the statute. The statute has to be satisfied by each piece of marketing or contract. But why can't we read clear and conspicuous in the initial contract in the light of what is then done after? That is, if this were really muddy, that would be one thing. But you would admit that it was clear and the question is whether it's conspicuous enough. Now, can we read that in the light of the fact that before anything happens, something else is sent that is really clear and conspicuous? Can we do that? It's not that something else, it's not, something happens initially. They move to direct energy from their normal power company, okay? That's the whole idea. That's the bait and switch here. That's what the legislature of New York said was so important. It is why the initial contract has to stand on its own as clear and conspicuous and the renewal has to stand alone as clear and conspicuous. There is no authority whatsoever. So you are saying that this case would still lie if the initial one was as it is, which you say is not conspicuous enough, and before anything happens, they send out something in bold letters saying, watch out, watch out, with videos and things that says you will be renewed unless you do this and that and the other. But that would still be a violation. That's a position you're taking. Well, something does happen. Something happens after the initial letter and before the initial letter and before the last one. But I agree that if nothing happened, Your Honor, but the legislature, I'm just not trying to intercede on what the legislature said. This is a statutory protection. The legislature says it has to be clear and conspicuous. There's no doubt that New York is worried about people being conned into this. I mean, there's no doubt about it. And the renewal notice itself, if it isn't a violation, then that's different. Originally, when we filed the complaint, we viewed the welcome letter as marketing materials, plus we had the initial contract with the disclosure statement, plus we had the renewal notice. It was all three of those as three independent violations. The welcome letter, as the court has already decided, and we aren't really arguing against it, that the welcome letter in and of itself is not a standalone document. It is a welcome letter. Fine. That leaves us with two documents that must satisfy this statute. The guidance that we get from the legislature does not, there isn't a form, this isn't like TILA, where there is a particular form, you give them, everyone gets this exact same form. That's not the case here. Here, the forms that were given is not, were literally, first of all, there's a question about which plaintiffs received them. But those forms do not satisfy clear and conspicuous, we believe, as the legislature. If the court finds that New York hasn't opined on it and the FTC guidance isn't obvious that it's going to be accepted, then, I mean, certainly, this court can throw it back to New York State for some guidance. But it's much different than Richards. The Connecticut scheme, the statutory scheme, is developed much differently than New York's. All right. We don't want to go through the Connecticut scheme, okay? So I think we have the arguments, and we'll reserve decision. Thank you both for coming in, and have a good day. Thank you, Your Honor. Appreciate it.